IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMOTHY NORDSTROM,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF WAHOO, a Political Subdivision of the State of Nebraska; GERALD D. JOHNSON; CARL WARFORD; RYAN IDEUS; SHANE SWEET; CHRIS RAPPL; STUART KREJCI; and PATRICK NAGLE, in their capacities as City Council members of the City of Wahoo,<br><br>Defendants. | NO. 8:23CV311<br><br><br>**MEMORANDUM AND ORDER REGARDING THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT** |

## I.   INTRODUCTION

Plaintiff Timothy Nordstrom is a retired city employee who brings four claims against his former employer, the City of Wahoo, Nebraska, (the City) and its seven city council members: Gerald D. Johnson, Carl Warford, Ryan Ideus, Shane Sweet, Chris Rappl, Stuart Krejci, and Patrick Nagle (collectively, the Council Members). Nordstrom's claims are for denial of fringe benefit payments under the Nebraska Wage Payment and Collection Act; breach of contract and violation of the Contract Clause of the United States Constitution and the Nebraska Constitution; estoppel and detrimental reliance; and negligent misrepresentation. Filing 1 at 10–14. All of Nordstrom's claims arise out of a provision in the City's employee manual pertaining to retirement health insurance benefits. The Court presently considers the parties' cross-motions for summary judgment.

1

The first such motion is the City's and the Council Members' (collectively, Defendants') Motion for Summary Judgment on all four of Nordstrom's claims. Filing 74. The second motion is Nordstrom's Motion for Summary Judgment on his first two claims, which the Court will refer to as Nordstrom's Motion for Partial Summary Judgment. Filing 78. For the reasons below, Defendants' Motion for Summary Judgment is granted in part and denied in part, and Nordstrom's Motion for Partial Summary Judgment is denied. Further, given that this order disposes of all federal claims in this case, the Court exercises its discretion to remand this case back to the District Court of Saunders County, Nebraska.

## II. PRELIMINARY CONSIDERATIONS

Before the Court turns to the merits of the parties' motions, however, the Court must address some preliminary matters that are determinative of whether the Court can consider certain parts of the record in ruling on the motions.

### A. Nordstrom's Local Rules Violations

First, the Court discusses the parties' obligation to comply with this Court's local rules. The Court divides this discussion between the two motions, considering the parties' actions with respect to each motion when appropriate.

#### 1. Defendants' Motion for Summary Judgment

When Defendants filed their Motion for Summary Judgment, Filing 74, on January 24, 2025, they also filed a supporting brief and a separate statement of material facts, consisting of 72 short, numbered paragraphs. *See* NECivR 56.1(a)(1)–(2); Filing 77 (Defendants' Brief in Support of their Motion); Filing 76 (Defendants' Statement of Material Facts); Filing 75 (Defendants' Index of Evidence in Support of their Motion). Under the local rules, Defendants' filings triggered Nordstrom's obligation to file a brief and a separate statement of concise responses to Defendants'

2

statement of material facts. NECivR 56.1(b)(1)(A). Nordstrom's separate statement of concise responses was to "consist of separate numbered paragraphs corresponding to the numbered paragraphs in the [Defendants'] separate statement of facts," and each response should have "clearly state[d] that the asserted fact is: (i) undisputed, (ii) disputed, or (iii) undisputed in part and disputed in part." NECivR 56.1(b)(1)(A)–(B).

Instead of complying with these rules, Nordstrom filed a brief opposing Defendants' Motion that included as an attachment to the brief a "Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment." Filing 89; Filing 89-1. As Defendants point out, Nordstrom's statement of 33 material facts, Filing 89-1, was not filed separately from his brief, nor does it respond to—much less correspond to—the numbered paragraphs in Defendants' statement of material facts. There is not a single paragraph in Nordstrom's statement of material facts that clearly states whether Defendants' asserted facts are undisputed, disputed, or undisputed in part and disputed in part. NECivR 56.1(b)(1)(B). Moreover, some of the paragraphs in Nordstrom's statement of material facts altogether fail to "include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which [Nordstrom] relies." NECivR 56.1(b)(1)(A). *See e.g.*, Filing 89-1 at 4 (¶ 12), 7 (¶¶ 24, 29). Nordstrom also begins over a third of his paragraphs with bracketed language, such as "[False Representations or Concealment]" or "[Proponent of Representation Carelessly Indifferent to Truth]," which is plainly an undisguised—and impermissible—attempt to assert legal arguments outside of his brief. NECivR 56.1(b)(1)(B) ("A response may not assert legal arguments except to make an objection to the evidentiary support for the asserted fact or the admissibly of that evidence."). *See e.g.*, Filing 89-1 at 5 (¶¶ 14, 16–18), 6 (¶¶ 19, 21–22), 7 (¶¶ 25–27, 29–30), 8 (¶

3

33). Nordstrom has not satisfied his obligation under the local rules to respond to Defendants' statement of material facts. NECivR 56.1(b)(1)(A).

To the extent Nordstrom intended for the statement of material facts attached to his opposition brief to function as a statement of additional material facts, he also has not complied with the local rules. Under NECivR 56.1(b)(2), if Nordstrom wishes to assert facts not set forth in Defendants' statement of material facts, he "may include in [his] response [his] statement of additional material facts, in the same form and manner as set forth in sections (a)(2), (3), and (4), above." *Id.* Nordstrom's first problem is a familiar one: he has not filed a separate response to Defendants' statement of material facts, so he could not have included in his response a statement of additional material facts. Nordstrom's second problem is that the statement of material facts attached to his opposition brief does not comply with NECivR 56.1(a)(2), (3), and (4). As the Court has already explained, not all of the numbered paragraphs in Nordstrom's statement "provide citations to the exact locations in the record supporting the factual allegations," his statement impermissibly contains legal conclusions, and his statement was not filed in a separate document from his brief. NECivR 56.1(a)(2), (3), and (4).

There are consequences for Nordstrom's failure to comply with the Court's local rules on summary judgment. Pursuant to NECivR 56.1(b)(1)(B), the Court deems all properly referenced material facts in Defendants' statement of material facts, Filing 76, to be admitted by Nordstrom. *Id.* ("Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." (emphasis removed)).

2.   Nordstrom's Motion for Partial Summary Judgment

Nordstrom filed his Motion for Partial Summary Judgment, Filing 78, on the same day that Defendants filed their Motion for Summary Judgment. Consistent with the Court's local rules,

4

Nordstrom filed a supporting brief and a separate statement of material facts, consisting of 19 short, numbered paragraphs. Filing 79 (Nordstrom's Brief in Support of his Motion); Filing 80 (Nordstrom's Statement of Material Facts); Filing 81 (Nordstrom's Index of Evidence in Support of his Motion); Filing 82 (Nordstrom's Second Index of Evidence in Support of his Motion). Defendants' responded to Nordstrom's Motion by filing an opposition brief, Filing 88, and a separate statement of relatively concise responses to Nordstrom's statement of material facts, Filing 87. Defendants also included in their response a statement of additional material facts. Filing 87 at 18–24. Under NECivR 56.1(c), Defendants' properly filed statement of additional material facts triggered Nordstrom's obligation to "serve and file a statement of concise responses to the [Defendants'] statement of additional material facts, in the same form as set forth in section (b)(1)(A) above." *Id.* Nordstrom did not file any statement of concise responses to Defendants' statement of additional material facts. Once again, Nordstrom's failure to comply with this Court's local rules has consequences. As before, the Court deems all properly referenced material facts in Defendants' statement of additional material facts, Filing 87, to be admitted by Nordstrom. NECivR 56.1(b)(1)(B).

## B.  Evidentiary Objections

Next, the Court addresses the evidence it will consider in ruling on the parties' motions. In their brief opposing Nordstrom's Motion for Partial Summary Judgment, Defendants raise multiple evidentiary objections to the evidence Nordstrom presents in support of his Motion. Filing 88 at 7–10. First, Defendants object to portions of paragraphs 2, 3, 5, 6, 7, and 9 of Nordstrom's affidavit attached as "Exhibit 1" to his first Index of Evidence in Support of his Motion for Partial Summary Judgment. Filing 81-1; Filing 88 at 7. Next, Defendants argue that Exhibits 3–23 and Exhibits 26–27 in Nordstrom's Indexes of Evidence are inadmissible and should be disregarded because

Nordstrom has failed to properly authenticate them. Filing 88 at 9. Defendants also contend that

Nordstrom's Exhibit 12 contains inadmissible hearsay and should therefore be disregarded. Filing

88 at 9–10.

1. Evidentiary Standards on Summary Judgment

As amended in 2010, Federal Rule of Civil Procedure 56(c) sets out the following procedures

for addressing the evidence at summary judgment:

**(c) Procedures**

**(1) *Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2) *Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3) *Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.

**(4) *Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

The Eighth Circuit Court of Appeals has explained, "Federal courts consider 'all admissible

evidence' on a motion for summary judgment." *Doe by next friend Rothert v. Chapman*, 30 F.4th

766, 770 (8th Cir. 2022) (quoting *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 759 (8th Cir. 2015)).

That court has cautioned, however, that "the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in the original); *see also Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (quoting *Gannon*, 648 F.3d at 793). In other words, "[t]hough parties may identify evidence at summary judgment that would be inadmissible at trial, they must demonstrate that the evidence may be offered at trial in an admissible form." *Smith*, 926 F.3d at 485; *see also* Fed. R. Civ. P. 56(c), advisory committee notes to 2010 amendment (explaining that "the burden is on the proponent to show that material is admissible as presented or to explain the admissible form that is anticipated").

### 2. Nordstrom's Affidavit

The Court begins with Defendants' objections to portions of paragraphs 2, 3, 5, 6, 7, and 9 of Nordstrom's affidavit attached as "Exhibit 1" to his first Index of Evidence in Support of his Motion for Partial Summary Judgment. Filing 81-1; Filing 88 at 7. Defendants contend that "[e]ven a cursory review of Plaintiff's affidavit illustrates he does not possess sufficient personal knowledge regarding several allegations set forth" in those challenged paragraphs. Filing 88 at 7. According to Defendants, the challenged portions of Nordstrom's affidavit "are inadmissible and should be disregarded by the Court for purposes of Plaintiff's Partial Motion." Filing 88 at 8.

Defendants object to the following portions of Nordstrom's affidavit:

> 2. I met the conditions precedent to qualify for the retirement health benefit (Index Ex. 24, Carolyn Barry Deposition, P73:l:6-17, and Index Ex. 25, Melissa Harrel Deposition, P81:L23-82:17).

> 3. Personal leave may be called sick leave by other employers. Unused personal leave was an earned benefit that may be carried forward from prior years, as compensation for services I provided to the Defendants. Unused vacation and personal leave were allowed to accrue during my employemnt [sic], and were not a "use it or lose it" benefit.

* * *

5. The Wahoo City council was the only body or person who had the authority to change the terms of the Policy Manuals (Index Ex. 3, City Council Listing). . . . The City Council made changes to the provisions surrounding the retirement health benefit in the policy manuals, as recently as 2004. (Index, Ex. 10, 2020 Policy Manual, P. DEFS0042).

6. The Blue Cross Blue Shield health insurance contract applications (hereinafter "BCBS Contracts") gave the Defendants the choice to provide health insurance for retirees like me almost every year from 2011 through 2022 (Index Ex. 14, BCBS Initial Application 2011, P. 4; Index Ex. 15, BCBS Application 2012, P. 4; Index Ex. 16, BCBS Application 2014, P. 3; Index Ex. 17, BCBS Application 2015, P. 3; Index Ex. 18, BCBS Application 2016, P.3; Index Ex. 19, BCBS Application 2017, P. 3; Index Ex. 20, BCBS Application 2018, P. N; Index Ex. 21, BCBS Application 2019, P. 3; Index Ex. 22, BCBS Application 2020, P. 3; and Index Ex. 23, BCBS Application 2021, P. 3). The mayor is also a City Council member, and he or she signed nearly all of these BCBS Contracts.

7. The City Administrator, Melissa Harrell, supervised the City's Human Resources Coordinator, Buffy Baker (Index Ex. 25, Harrel [sic] Deposition, P36:11-20). . . . Buffy Baker signed the 2021 BCBS Contract on November 17, 2021 (Index Ex. 23, BCBS Application 2021, P. 9). The new coverage period under the new BCBS Contract was set to begin on December 1, 2021. (Id. at P. 1).

* * *

9. The 2022 Policy Manual had deleted the retirement health benefit (Index Ex. 11, 2022 Policy Manual, P. DEFS00863).

Filing 81-1 at 1–3; Filing 88 at 7–8.

The Eighth Circuit has explained the requirements for an affidavit or a declaration used at summary judgment as follows: "Rule 56(c)(4) requires '[a]n affidavit or declaration used to support or oppose a motion [to] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(4)). The "personal knowledge" requirement in Rule 56(c)(4) is further explained in Federal Rule of Evidence 602. That rule provides,

A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Fed. R. Evid. 602.

The Eighth Circuit addressed how Federal Rule of Evidence 701 concerning lay opinions relates to the "personal knowledge" requirement of Rule 602 in *United States v. Espino*, 317 F.3d 788 (8th Cir. 2003). The Eighth Circuit explained,

Federal Rule of Evidence 602 requires that a witness have personal knowledge of the matters about which he or she testifies, except in the case of expert opinions. Federal Rule of Evidence 701 allows lay opinion that "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Rule 701 permits such testimony if it is based on "relevant historical or narrative facts that the witness has perceived," *Teen-Ed, Inc. v. Kimball Intern., Inc.*, 620 F.2d 399, 403 (3rd Cir. 1980), and if it "would help the factfinder determine a matter in issue," *Hurst v. United States*, 882 F.2d 306, 312 (8th Cir. 1989). "While the ordinary rule confines the testimony of a lay witness to concrete facts within his knowledge or observation, the [c]ourt may rightly exercise a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience." *United States v. Oliver*, 908 F.2d 260, 264 (8th Cir. 1990) (citing *Batsell v. United States*, 217 F.2d 257, 262 (8th Cir. 1954)). Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *See United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001); *United States v. Cortez*, 935 F.2d 135, 139–40 (8th Cir. 1991); *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244–45 (9th Cir. 1997).

The general application of Rule 701 indicates that a lay witness may testify about facts within his or her range of generalized knowledge, experience, and perception.

*Espino*, 317 F.3d at 796–97 (footnotes omitted).

According to Nordstrom, his "ability to read the Depositions of Ms. Harrell and Ms. Barry, when they make statements against interest, should suffice for personal knowledge," and so should his "ability to read the various versions of the policy manuals and [BlueCross BlueShield] contracts,

and repeat what they assert as a statement against interest." Filing 94 at 7. The Court does not agree. Rather, the Court concludes that Nordstrom has not introduced evidence sufficient to support a finding that he has personal knowledge about many of the matters challenged by Defendants. *See* Fed. R. Evid. 602. For example, the Court will not consider Nordstrom's challenged statements in paragraphs 6 and 7 that are based entirely on the health insurance contract applications between BlueCross BlueShield and the City (submitted as Exhibits 14 through 23 in Nordstrom's Indexes of Evidence) because Nordstrom has not provided any evidence suggesting that he was a party to those contracts, that he received those contracts while he was employed with the City, or that he was aware of the contents of those contracts apart from reading them prior to drafting his affidavit. Similarly, the Court will not consider Nordstrom's challenged statement in paragraph 9 that is based entirely on the City's 2022 Policy Manual (submitted as Exhibit 11 in Nordstrom's Indexes of Evidence) because Nordstrom has not introduced any evidence supporting a finding that he had personal knowledge of an employee manual distributed after his retirement. The Court also will not consider the first challenged statement in paragraph 3—Nordstrom's claim that "Personal leave may be called sick leave by other employers"—because Nordstrom has not produced any evidence demonstrating his familiarity with the leave practices of "other employers."

On the other hand, the Court concludes that Nordstrom has introduced evidence sufficient to support a finding that he has personal knowledge of all of the challenged statements in paragraphs 2 and 5 and the first challenged statement in paragraph 7 because he has presented testimony that he was employed by the City from 1980 to November 2021 and that he was familiar with the various employee manuals—and the provisions within the employee manuals—issued during those years. Defendants are free to disagree with Nordstrom's statements in these paragraphs, but the Court overrules Defendants' objection that Nordstrom lacks personal knowledge regarding the challenged

10

statements. Similarly, the Court overrules Defendants' objection to the remaining challenged statements in paragraph 3—namely, Nordstrom's statements regarding "[u]nused vacation and personal leave" during his employment with the City. Under the "general application" of Federal Rule of Evidence 701, "a lay witness may testify about facts within his or her range of generalized knowledge, experience, and perception." *Espino*, 317 F.3d at 797. Nordstrom's explanation of his unused vacation and personal leave is testimony about facts within his range of experience. *Id.*

3. Nordstrom's Exhibits 3–23 and 26–27

Defendants also argue that Nordstrom has failed to properly authenticate Exhibits 3–23 and 26–27[1] offered in support of his Motion because the only attempt at authentication occurred in Nordstrom's counsel's affidavit, Filing 81-2, and that attempt was improper. Filing 88 at 9. As Defendants point out, Nordstrom's counsel's affidavit alleges, "The documents attached to the Index of Evidence are true and correct copies of the identified documents," and then lists the relevant exhibits, including Exhibits 3–23 and 26–27. Filing 81-2 at 1, 2. Filing 88 at 9. Defendants contend that Nordstrom's counsel's statement did not properly authenticate the challenged exhibits because Nordstrom "has failed to cite to or otherwise offer any additional testimony by way of affidavit or deposition authenticating and laying foundation for said exhibits, and the record is devoid of any

---

[1] Those exhibits are the following: City Council Listing (Exhibit 3); Nordstrom's Resignation Letter (Exhibit 4); Melissa Harrell Response Letter (Exhibit 5); City Council Agenda from February 2022 (Exhibit 6); City Council Minutes from February 2022 (Exhibit 7); The City's 1994 Policy Manual (Exhibit 8); The City's 2004 Policy Manual (Exhibit 9); The City's 2020 Policy Manual (Exhibit 10); The City's 2022 Policy Manual (Exhibit 11); Robert Meduna Offer Letter (Exhibit 12); Ryan Hurst Email from 2021 (Exhibit 13); BlueCross BlueShield Initial Application from 2011 (Exhibit 14); BlueCross BlueShield Initial Application from 2012 (Exhibit 15); BlueCross BlueShield Initial Application from 2014 (Exhibit 16); BlueCross BlueShield Initial Application from 2015 (Exhibit 17); BlueCross BlueShield Initial Application from 2016 (Exhibit 18); BlueCross BlueShield Initial Application from 2017 (Exhibit 19); BlueCross BlueShield Initial Application from 2018 (Exhibit 20); BlueCross BlueShield Initial Application from 2019 (Exhibit 21); BlueCross BlueShield Initial Application from 2020 (Exhibit 22); BlueCross BlueShield Initial Application from 2021 (Exhibit 23); City Attorney Letter from April 5, 2022 (Exhibit 26); Robert Sullivan Reply Letter from April 8, 2022 (Exhibit 27).

indication that Plaintiff's counsel has personal knowledge concerning said exhibits that would permit him to properly authenticate the same." Filing 88 at 9.

In response, Nordstrom argues that "[t]he Defendants do not identify any basis for a belief these [challenged] documents are not true and accurate copies," and he notes that his "counsel provided an affidavit stating they are true and accurate copies of said documents." Filing 94 at 8. Nordstrom accuses Defendants of "presenting a red herring" because "[t]he majority of these documents come from the Defendants['] own records, as noted by the 'DEF' Bates Stamp" and because Nordstrom "provided a sworn statement in his own affidavit, describing these documents." Filing 94 at 8. Nordstrom further asserts that "[t]hese documents are very likely to be admissible at trial" because he "will secure authentication of the bulk of these documents from testimony of the Defendants or their agents" or he "will seek certified copies under [Federal Rule of Evidence] 902(2) or (4), if the Defendants are not willing to stipulate to their own records being accurate." Filing 94 at 8. Nordstrom argues that the challenged exhibits "can be found to be business records as [a] hearsay exception, or statements by party-opponents, among other avenues." Filing 94 at 8.

"To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence. . . ." *Life Investors Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1121–22 (8th Cir. 2012) (quoting *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635–36 n.20 (8th Cir. 2000)). *See also* NECivR 7.1(b)(2)(C) ("An affidavit must identify and authenticate any documents offered as evidence."). Federal Rule of Evidence 901 provides in pertinent part, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). More specifically, Rule 901(b)(1) provides that one example of evidence that satisfies the authentication

12

requirement is "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1); *see also Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) ("In light of the lack of affidavits supporting [plaintiff's] submissions, we conclude the district court neither abused its discretion nor committed any error by striking [plaintiff's] unauthenticated and inadmissible exhibits.").

The Court agrees with Defendants that in the absence of any indication that Nordstrom's counsel has any personal knowledge concerning the challenged exhibits, Nordstrom's counsel's statement that "The documents attached to the Index of Evidence are true and correct copies of the identified documents" alone is insufficient to authenticate the documents. *See Life Investors Ins. Co.*, 687 F.3d at 1121–22; *see also Barger v. Johanns*, No. 4:04CV3268, 2006 WL 680889, *8 (D. Neb. Mar. 13, 2006) (striking the plaintiff's affidavit and its attachments because "Plaintiff's affidavit merely recites that the attached documents 'are true and correct copies'" and because "there is no indication that Plaintiff has any personal knowledge concerning the documents that would permit him to describe what they are"). However, the Court notes that Nordstrom's Exhibits 26 and 27 are letters to and from the law firm with which Nordstrom's counsel is associated. Filing 82-14; Filing 82-15. Although Nordstrom's counsel is not the named recipient or signer of those letters, the Court will assume without deciding that Nordstrom's counsel does have personal knowledge concerning Exhibits 26 and 27 for the purposes of Nordstrom's Motion. Because Defendants have not challenged those exhibits beyond their authenticity, the Court will assume further without deciding that they could be presented in an admissible form at trial. *See* Fed. R. Civ. P. 56(c)(4).

Moreover, Nordstrom is correct that Defendants have challenged some of the very same documents they offered in support of their Motion for Summary Judgment. *Compare* Filing 81-4 (Nordstrom's Letter of Resignation, submitted by Nordstrom as Exhibit 4), Filing 81-5 (Melissa Harrell's Response Letter, submitted by Nordstrom as Exhibit 5), Filing 81-7 (City Council Meeting

13

Minutes from February 22, 2022, submitted by Nordstrom as Exhibit 7), Filing 81-12 (City of Wahoo Employee Policies and Procedures Manual from 2020, submitted by Nordstrom as Exhibit 10), *and* Filing 82-1 (Ryan Hurst Email, submitted by Nordstrom as Exhibit 13), *with* Filing 75-23 (Nordstrom's Letter of Resignation, submitted by Defendants as Exhibit 23), Filing 75-24 (Melissa Harrell's Response Letter, submitted by Defendants as Exhibit 24), Filing 75-10 (City Council Meeting Minutes from February 22, 2022, submitted by Defendants as Exhibit 10), Filing 75-7 (City of Wahoo Employee Policies and Procedures Manual from 2020, submitted by Defendants as Exhibit 7), *and* Filing 75-19 (Ryan Hurst Email, submitted by Defendants as Exhibit 19). Clearly Defendants believe these documents can be presented at trial in an admissible form. *See Gannon Int'l, Ltd.*, 684 F.3d at 793. Accordingly, the Court overrules Defendants' objection to Nordstrom's Exhibits 4, 5, 7, 10, and 13. *See Daud v. Nat'l Multiple Sclerosis Soc'y*, No. 18-00537-CV-W-ODS, 2019 WL 3082467, *4 (W.D. Mo. July 15, 2019) ("Defendant cannot utilize an exhibit to support one of its facts, ostensibly representing the exhibit is admissible, but also argue Plaintiff cannot use the same exhibit to support one of her facts because it is purportedly inadmissible.").

As for the remaining challenged exhibits, the Court concludes for the same reasons laid out in Section II.B.2. above that Nordstrom has not produced any evidence based on his personal knowledge or the personal knowledge of any other affiant to support a finding that Exhibits 3, 6, 11, or 14–23 are what they purport to be under Rule 901(a). Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); *Life Investors Ins. Co.*, 687 F.3d at 1121–22 ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts

14

as would be admissible in evidence. . . ." (citation omitted)). The Court will not consider those exhibits at the summary judgment stage.

On the other hand, Nordstrom's affidavit, Filing 81-1, does contain sufficient facts based on Nordstrom's personal knowledge to suggest that Exhibits 8, 9, and 12 are what they purport to be. *See Life Investors Ins. Co.*, 687 F.3d at 1121–22. Namely, Nordstrom's affidavit indicates that he received those exhibits while he was employed with the City. Filing 81-1 at 1 (¶ 2), 2 (¶ 3). However, Defendants have also challenged Exhibit 12 on the grounds that it "constitutes inadmissible unsworn hearsay and should therefore be disregarded for purposes of Plaintiff's Partial Motion, as Plaintiff has made no showing that the hearsay contained therein could be presented in a manner that is admissible." Filing 88 at 9. Nordstrom notably has not attempted to explain how Exhibit 12 could be presented in a form that would be admissible at trial. *See Great N. Ins. Co. v. Aegis Scientific Inc.*, 8:20CV539, 2022 WL 18086880, *4 (D. Neb. June 10, 2022) (citing *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) ("Though parties may identify evidence at summary judgment that would be inadmissible at trial, they must demonstrate that the evidence may be offered at trial in an admissible form."), and Fed. R. Civ. P. 56(c)). Thus, the Court will not consider Exhibit 12 at summary judgment.

### C. Summary

In sum, pursuant to NECivR 56.1(b)(1)(B), the Court deems all properly referenced material facts in Defendants' statement of material facts submitted in support of their Motion for Summary Judgment, Filing 76, to be admitted by Nordstrom. Likewise, the Court deems all properly referenced material facts in Defendants' statement of additional material facts submitted in opposition to Nordstrom's Motion for Partial Summary Judgment, Filing 87, to be admitted by Nordstrom.

The Court sustains Defendants' objections to some of the contested paragraphs in Nordstrom's affidavit because Nordstrom has not introduced evidence sufficient to support a finding that he has personal knowledge of the matters contained in those challenged portions. *See* Fed. R. Evid. 602. Specifically, the Court will not consider the entire challenged portions of paragraphs 6 and 9. The Court also will not consider the first challenged statement in paragraph 3 ("Personal leave may be called sick leave by other employers") and the last two challenged statements in paragraph 7 ("Buffy Baker signed the 2021 BCBS Contract on November 17, 2021" and "The new coverage period under the new BCBS Contract was set to begin on December 1, 2021"). The Court overrules Defendants' objections to the remaining contested paragraphs in Nordstrom's affidavit. The Court will consider the entire challenged portions of paragraphs 2 and 5, as well as the remaining challenged portions of paragraphs 3 and 7.

Finally, the Court sustains Defendants' objections to Nordstrom's Exhibits 3, 6, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23 on the grounds that Nordstrom has not properly authenticated the exhibits pursuant to Federal Rule of Evidence 901(a). Although the Court finds that Nordstrom's affidavit contains sufficient facts based on Nordstrom's personal knowledge to suggest that Exhibit 12 is what it purports to be, the Court nevertheless will not consider Exhibit 12 because Nordstrom has not responded to Defendants' hearsay objection or attempted to explain how this exhibit could be presented in a form that would be admissible at trial. The Court overrules Defendants' authentication-related objections to Nordstrom's Exhibits 4, 5, 7, 8, 9, 10, 13, 26, and 27 and will thus consider those exhibits as appropriate.

### III. BACKGROUND

With the question of the record that the Court can consider now settled, the Court turns to the merits of the parties' motions. Below, the Court sets forth only the factual background that it deems necessary to the present resolution of the parties' motions.

#### A.  Factual Background

1.  The Retirement Health Insurance Provision

Plaintiff Timothy Nordstrom started working for the City of Wahoo, Nebraska, on April 14, 1980, and remained employed by the City until November 19, 2021, when he retired. Filing 76 at 2 (¶¶ 5–6); Filing 87 at 8 (¶ 10). Nordstrom was 62 years old when he retired, having turned 62 on November 18, 2021. Filing 76 at 2 (¶ 7); Filing 87 at 7 (¶ 9). At the time Nordstrom retired, the City's Employee Policies and Procedures Manual (Employee Manual) contained a provision stating, "If an employee retires at age 62 and has completed 20 years of service, the employee may forfeit 480 hours of accumulated personal leave and opt to have 'employee only' health insurance paid to age 65." Filing 76 at 5 (¶ 17); Filing 87 at 7 (¶ 9). Nordstrom referenced this retirement health insurance provision in his written notice of retirement which he submitted in early November 2021 and which informed the City that, "According to paragraph 9 on page 38 of the City of Wahoo Personnel Policy Manual I elect to forfeit 480 hours of my accumulated personal leave and opt to have the City pay my health insurance paid [sic] until I reach the age of 65." Filing 76 at 14 (¶ 60); Filing 87 at 8 (¶ 10).

The parties dispute whether the retirement health insurance provision contemplated continued health insurance coverage following retirement or merely the payment of health insurance premium costs. *See* Filing 79 at 7. It is undisputed, however, that the City did not provide Nordstrom any health insurance benefits following his retirement, even though he retired at age 62 after more

17

than 20 years of service and with 480 hours of accumulated personal leave available to forfeit. Filing
76 at 15 (¶ 65); Filing 87 at 15–16 (¶ 18). The City's reason for not providing Nordstrom any
retirement health insurance benefits is also undisputed: the City's contract with its health insurance
provider, BlueCross BlueShield of Nebraska (BlueCross BlueShield), prohibited the City from
providing continued health insurance coverage to employees who no longer worked for the City,
and that contract superseded the retirement health insurance provision in the Employee Manual.
Filing 76 at 7 (¶ 29); Filing 87 at 10 (¶ 12 n.2), 15–16 (¶ 18). The parties dispute the date on which
the City first informed Nordstrom why it would not provide him with continued health insurance
coverage after his retirement, but it is undisputed that Nordstrom learned of the City's reason before
his final day of employment. Filing 87 at 7–8 (¶ 10). All of Nordstrom's claims against Defendants
turn on the retirement health insurance provision. Filing 76 at 5 (¶ 18).

2.   The Employee Manual

Throughout Nordstrom's employment with the City, the City revised its Employee Manual
on multiple occasions. Filing 76 at 3 (¶ 12). Instead of redistributing to its employees a complete
copy of the Employee Manual after each revision, the City typically distributed a copy of the revised
provision or provisions only and then instructed the employees to incorporate the revisions into their
copy of the Employee Manual. Filing 76 at 3 (¶ 13). In 2001, however, the City did distribute a
complete copy of the revised Employee Manual to its employees. Filing 76 at 2 (¶ 10). Upon receipt
of the 2001 version of the Employee Manual, City employees were required to sign a Personnel
Policy Manual Acknowledgment form. Filing 76 at 2 (¶ 10). On February 12, 2001, Nordstrom
signed the form, which stated that,

> I, [Tim Nordstrom], hereby acknowledge that I have received a copy of the City of
> Wahoo Employee Policies and Procedures Manual, which provides guidance
> affecting my employment with the City of Wahoo. I understand that the City of

> Wahoo can at the sole discretion of the City Council, modify, eliminate, revise or deviate from the guidelines and information in this handbook as circumstances or situations warrant.
>
> I also understand that any changes made by the City of Wahoo with respect to its policies, procedures, or programs can supersede, modify, or eliminate any of the policies or procedures as outlined in this handbook. I accept responsibility for familiarizing myself with the information in this manual and will seek verification or clarification of its terms or guidance when necessary.
>
> Furthermore, I acknowledge that this manual is neither a contract of employment nor a legal document and nothing in the manual creates an express or implied contract of employment.
>
> Should an issue arise that is not addressed in this handbook, I understand that I must consult with my supervisor, department head or Appointed Official to obtain guidance.

Filing 76 at 2–3 (¶ 11). Between July 1994 and November 2021, when Nordstrom retired, the retirement health insurance provision remained unchanged in the Employee Manual. Filing 87 at 9 (¶ 11). On February 22, 2022, the Council Members voted to remove the retirement health insurance provision from the Employee Manual. Filing 76 at 5 (¶ 20); Filing 87 at 9 (¶ 11).

Apart from the retirement health insurance provision, the Employee Manual in effect at the time of Nordstrom's retirement also contained the following language:

> This manual is intended to serve only as a guide for City employees. It is not a contract between employees and the City of Wahoo. Some of these policies may be impacted by City ordinances, contracts or State and Federal Laws. In event of a conflict, those policies, contracts and laws apply.
>
> The City of Wahoo is committed to reviewing its policies and benefits continually. Accordingly, the policies and benefits outlined in this handbook are subject to change and review by the City at any time without notice. These policies and procedures have been adopted by, and can only be amended by the City Council.

Filing 76 at 3–4 (¶ 14); Filing 92 at 6 (¶ 3); Filing 75-7 at 1; Filing 81-12 at 1. Like the retirement health insurance provision, this language appeared in the Employee Manual from 1994 to November

2021. [Filing 76 at 3](¶ 14). At the time of Nordstrom's retirement, the Employee Manual further

stated,

> This personnel policy manual does not constitute a contract of employment between the City of Wahoo and employees and no employee shall have a vested right in his/her employment or in the policies and procedures set forth in this manual. The information contained in this manual reflects a general description of the policies, procedures and benefits that are currently in effect. The City of Wahoo retains the right to modify or revoke these policies, procedures and benefits at any time.

[Filing 76 at 4](¶ 15); [Filing 75-7 at 3](¶); [Filing 81-12 at 3](¶).

### B. Procedural Background

Nordstrom originally filed this action against Defendants in the District Court of Saunders

County, Nebraska, bringing four claims related to the retirement health insurance provision in the

Employee Manual. [Filing 1 at 7](¶)–18. Nordstrom's First Cause of Action is a claim under the

Nebraska Wage Payment and Collection Act (NWPCA) alleging that the City "breached its statutory

duty to pay fringe benefits" when it "failed and refused to provide payment for Plaintiff's accrued

health insurance costs within 30 days of his employment ending." [Filing 1 at 11](¶¶ 20–21).

Nordstrom's Second Cause of Action is titled "Breach of Contract." [Filing 1 at 11](¶). In his Second

Cause of Action, Nordstrom claims that he "has a valid and enforceable contract with [the City],

expressly and implicitly, that in exchange for providing services, the Plaintiff, upon retirement,

would be able to receive retirement health insurance." [Filing 1 at 11](¶ 23). Nordstrom alleges that

the City breached that contract, and he also avers that the City's "refusal to provide the retirement

health insurance violates [his] right to contract under the United States Constitution, and Nebraska

Constitution." [Filing 1 at 12](¶ 24). Nordstrom's Third Cause of Action is a claim for "Estoppel and

Detrimental Reliance" that seeks to estop the City "from breaching [its] promise of retirement health

benefits to Plaintiff, regardless of whether the parties had a contract." [Filing 1 at 13](¶ 30). Finally,

Nordstrom's Fourth Cause of Action alleges that Defendants "should be found to have misrepresented the availability of the retirement health benefits to Plaintiff and other for a significant time, and this misrepresentation breaches its duty of due care and competence." Filing 1 at 14 (¶ 35).

On July 19, 2023, Defendants removed Nordstrom's action to this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(a). Filing 1 at 2 (¶ 6). In their Notice of Removal, Defendants argued that this Court has original federal question jurisdiction over Nordstrom's claims brought under 42 U.S.C. § 1983 and the United States Constitution—namely, his claims that Defendants violated his constitutional right to contract—and supplemental jurisdiction over his remaining state law claims. Filing 1 at 2 (¶¶ 4–7). Although Nordstrom moved to remand, Filing 5, the Court accepted the United States Magistrate Judge's Findings and Recommendations and denied Nordstrom's motion to remand on the grounds that "federal question jurisdiction, and therefore removal jurisdiction, exists because [he] includes claims based on 42 U.S.C. § 1983 and the Contract Clause of the U.S. Constitution." Filing 10 at 2. Defendants filed their Answer on September 22, 2023. Filing 9.

As the Court has already explained in some detail in Section II.A. above, the parties filed cross-motions for summary judgment on the same day. While Defendants seek summary judgment on all four of Nordstrom's claims, Nordstrom only seeks summary judgment on his First Cause of Action (the NWPCA claim) and on the breach of contract portion of his Second Cause of Action. Filing 74 at 1; Filing 78 at 1. Nordstrom does not appear to seek summary judgment on the Contract Clause portion of his Second Cause of Action. *See generally* Filing 78; Filing 79. Both motions are fully briefed.

21

## IV. STANDARDS FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, whether or not a court should grant summary judgment often turns on whether or not genuine issues of material fact are apparent on the record. "A factual dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Liberty Ins. Corp. v. HNTB Corp.*, 87 F.4th 886, 888 (8th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In that context, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), reh'g denied, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the . . . absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022);

*Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019). "The Supreme Court's 'repeated' admonition is that '[the [claimant], to survive the [opposing party's] [summary judgment] motion, need only present evidence from which a jury might return a verdict in his favor.'" Doe by next friend *Rothert v. Chapman*, 30 F.4th 766, 772 (8th Cir. 2022) (quoting *Anderson*, 477 U.S. at 257).

## V.  LEGAL ANALYSIS

The Court begins its analysis with Nordstrom's Second Cause of Action because the § 1983 Contract Clause claim embedded within the Second Cause of Action served as the basis for removing this case to federal court and because both parties seek summary judgment on at least some part of the Second Cause of Action. If the Second Cause of Action cannot survive summary judgment, the Court will then consider whether to exercise supplemental jurisdiction over Nordstrom's remaining state law claims.

### A.  Nordstrom's Second Cause of Action

#### 1.  The Binary Nature of the Second Cause of Action

There are two components to Nordstrom's Second Cause of Action: a state law component and a federal law component. The state law component is made up of a breach of contract claim and a claim for the violation of Nordstrom's right to contract under the Contract Clause of the Nebraska Constitution, Neb. Const. art. 1, § 16. Filing 1 at 11–12 (¶ 24). The federal law component is comprised entirely of a § 1983 claim for the violation of Nordstrom's right to contract under the Contract Clause of the United States Constitution, U.S. Const. art. 1, § 10. Filing 1 at 11–12 (¶ 24).

In its analysis below, the Court will consider both the state law component and the federal law component of the Second Cause of Action. The Court has already explained that it has federal question jurisdiction over Nordstrom's federal Contract Clause claim. "A district court exercising original jurisdiction over federal claims also has supplemental jurisdiction over state claims which

'form part of the same case or controversy' as the federal claims." *Starkey v. Amber Enter., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (quoting 28 U.S.C. § 1367(a)). Because a state Contract Clause analysis is substantially similar to a federal Contract Clause analysis, the Court "act[s] well within its discretion in exercising jurisdiction" over Nordstrom's state Contract Clause claim. *Id.*; *Harrington v. Strong*, 363 F. Supp. 3d 984, 1009 n.21 (D. Neb. Jan. 29, 2019) ("The Nebraska Constitution's Contracts Clause is nearly identical to the U.S. Constitution's Contracts Clause and the analyses of claims brought under both are substantially similar."). The Court also properly exercises supplemental jurisdiction over Nordstrom's breach of contract claim because both federal and state Contract Clause analyses require the Court to look to state law to determine whether Nordstrom possessed contractual rights in the first place and because Nebraska law regarding employment contracts is well-settled. *See Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 437 (8th Cir. 2007) (explaining that although a court analyzing a federal Contract Clause claim is "bound to decide for itself whether a contract was made," this decision "involves an appraisal of the statutes of the states and the decisions of its highest courts"); *Christiansen v. Cnty. of Douglas*, 849 N.W.2d 493, 505–06 (Neb. 2014) (looking to previous Nebraska Supreme Court cases to determine whether the plaintiffs possessed contractual rights protected by the state Contract Clause). *See also Starkey*, 987 F.3d at 765–66 (concluding that the district court correctly exercised supplemental jurisdiction over a state law claim that was "neither novel nor complex" and involved "well-settled principles of state law," despite remanding other state claims to state court (internal quotation marks and citations omitted)).

    2.   The Defendants' Motion for Summary Judgment

       The Court first considers the Second Cause of Action in the context of Defendants' Motion for Summary Judgment.

a.   The Parties' Arguments

Defendants argue that they are entitled to summary judgment on both the state law and the federal law components of Nordstrom's Second Cause of Action for the following reasons. First, Defendants contend that Nordstrom has failed to establish that the Employee Manual—which contained the retirement health insurance provision—constituted either an explicit or implicit contract between Nordstrom and the City, meaning no contract was breached when the City did not provide Nordstrom with health insurance coverage following his retirement. Filing 77 at 12–14. According to Defendants, Nordstrom has not established that the language of the Employee Manual meets the requirements for a unilateral contract under Nebraska law because the Employee Manual in effect at the time of Nordstrom's retirement clearly notified him that the Employee Manual did not create a contractual obligation between him and the City, "mandating dismissal of his breach of contract claim." Filing 77 at 7–8, 13. Defendants also argue that the undisputed evidence establishes that the City did not express an objective manifestation to contract with Nordstrom through the Employee Manual, meaning the Employee Manual did not constitute an implied contract. Filing 77 at 14. Even if the Employee Manual did create an enforceable contract between the City and Nordstrom, Defendants assert that the City did not breach that contract when it failed to provide Nordstrom with retirement health insurance coverage because the Employee Manual itself clearly stated that in the event of a conflict between the Employee Manual and a City contract—such as the City's health insurance contract with BlueCross BlueShield—the City contract would supersede any conflicting provisions in the Employee Manual. Filing 77 at 14.

Second, Defendants argue that they are entitled to summary judgment on Nordstrom's state and federal Contract Clause claims because in the absence of a contract between the City and Nordstrom, Nordstrom had no contractual right to continue receiving health insurance coverage

25

from the City following his retirement. Filing 77 at 15. Although Defendants contend that the absence of a contract "alone is fatal to Plaintiff's Contracts Clause claim," they further argue that even if Nordstrom did have a contractual right to continue receiving health insurance coverage in his retirement, the Council Members did not substantially impair any such right when they voted in February 2022 to remove the retirement health insurance provision from the Employee Manual. Filing 77 at 16. Moreover, Defendants' claim, the Council Members' vote to remove the provision was narrowly tailored to serve the legitimate public purpose of amending the Employee Manual to make its language consistent with the City's health insurance contract with BlueCross BlueShield. Filing 77 at 17.

In response to Defendants' breach of contract arguments, Nordstrom asserts that he "accepted the Defendants['] unilateral offer to contract, namely, that Defendants' policy manual allows him to be paid his accrued paid leave in amounts equal to employee only health insurance to age 65." Filing 89 at 5. Nordstrom contends that "[t]he Defendants['] consistent re-iteration that the unilateral contract term in their policy manual was not enforceable is not followed in several Nebraska cases," but he does not cite those cases. Filing 89 at 5. Nordstrom also argues that the "set of facts [in this case] clearly meets the elements for such a unilateral contract being possible and executed," but he does not identify or apply the elements of a unilateral contract. Filing 89 at 6. Instead, Nordstrom outlines the following three "material issues of fact precluding summary judgment in Defendants['] favor on Contract Claims": (1) the City's "policy manual required payment of premiums, not coverage under [an] existing policy"; (2) Defendants' "belief [that the] policy manual is advisory renders any payment of paid leave unenforceable"; and (3) "equity allows [the] Court to find Defendants created a conflict to avoid payment of the benefits." Filing 89 at 6–8 (reduced from capitals). As Defendants point out in their reply brief, Nordstrom's three arguments

26

do not address Defendants' claim that the Employee Manual did not constitute an enforceable contract. Filing 93 at 14.

Before countering Defendants' Contract Clause arguments, Nordstrom "agrees with the Defendants that absent a finding that there is a contract between the parties, then the impairment of contract cause of action ends." Filing 89 at 10. Nordstrom contends, however, that he "satisfies the initial prong of contract impairment under State or Federal law, namely, whether the contract was impaired, and the impairment was substantial." Filing 89 at 12. Although he references "the contractual relationship between the parties," Nordstrom does not explain how he "satisfies the initial prong" apart from his earlier claim that "this set of facts clearly meets the elements for such a unilateral contract being possible and executed." Filing 89 at 12. Nordstrom does assert that "the cost to the Plaintiff [of not receiving retirement health insurance benefits] certainly seems substantial," and he argues that the "payment of an excess of $44,000 more in [health insurance] costs beyond what was promised at the time he retired is a substantial impairment" for him. Filing 89 at 12. Ultimately, Nordstrom argues that "the Defendants must face the consequences of both failing to pay under the original unilateral contract, and also impairing the continuation of the contract by their February, 2022 revocation of the benefits provision." Filing 89 at 13.

  b.  The Breach of Contract Claim

The Court will begin with the breach of contract claim, as the parties appear to agree that the existence—or nonexistence—of a contract between them impacts the Contract Clause analyses. Filing 77 at 15; Filing 89 at 10. Nordstrom alleges that he has a "valid and enforceable contract" with the City, "expressly and implicitly, that in exchange for providing services, the Plaintiff, upon retirement, would be able to receive the retirement health insurance." Filing 1 at 11 (¶ 23). Nordstrom's basis for this alleged contract appears to be the Employee Manual—specifically the

27

retirement health insurance provision that existed in the Employee Manual from July 1994 to November 2021, when Nordstrom retired. *See, e.g.*, Filing 89 at 5; Filing 76 at 5 (¶¶ 18–19). Nordstrom accuses the City of breaching that alleged contract. Filing 1 at 11 (¶ 24).

Despite Nordstrom's allegation that he has a "valid and enforceable contract with [the City], expressly and implicitly," he only makes arguments supporting the existence of an express contract—specifically, a unilateral contract. Filing 1 at 11 (¶ 23); Filing 89 at 6–9. In fact, Nordstrom has altogether failed to respond to Defendants' argument that Nordstrom has not established that the City breached an enforceable implied contract. Filing 77 at 13–14; *see generally* Filing 89. The only time Nordstrom even mentions the term "implied contract" is in support of his First Cause of Action (the NWPCA claim), and there he makes an argument about how the Court should rule "regardless of [an] implied contract existing." Filing 89 at 9. As a result, the Court concludes that Nordstrom has failed to carry his burden to oppose summary judgment as to a breach of implied contract claim. *See* Fed. R. Civ. P. 56(c)(1) (stating that the party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the . . . absence of a genuine dispute.").

i.    Applicable Law

The Court now turns to whether the Employee Manual constitutes an express contract. "In order to prevail on a breach-of-employment-contract claim" under Nebraska law, a plaintiff must initially prove the 'existence of the contract, its terms and his compliance with them until his discharge, the employer's breach, and damages.'" *Mauer v. Union Pacific R.R. Co.*, 8:19-CV-410, 2020 WL 918810, *3 (D. Neb. Jan. 24, 2020) (quoting *Schuessler v. Benchmark Mktg. & Consulting, Inc.*, 500 N.W.2d 529, 538 (Neb. 1993)). Put another way, "[t]he burden of proving the existence of an employment contract and all the facts essential to the [breach of contract] cause of

28

action is upon the person who asserts the contract." *Blinn v. Beatrice Comm. Hosp. & Health Ctr., Inc.*, 708 N.W.2d 235, 245 (Neb. 2006). Here, Nordstrom bears the burden of proving the existence of an employment contract between him and the City. *Id.*

The Nebraska Supreme Court has held that the language in an employee handbook may become part of the employment contract if it "meet[s] the requirements for formation of a unilateral contract." *Hillie v. Mutual of Omaha Ins. Co.*, 512 N.W.2d 358, 361 (Neb. 1994). "In other words, the language must constitute *an offer definite in form which is communicated to the employee*, and the offer must be accepted and consideration furnished for its enforceability." *Id.* (emphasis in the original). *See also Blinn*, 708 N.W.2d at 245 ("The language which forms the basis of an alleged employment contract, whether oral or written, must constitute an offer definite in form which is communicated to the employee, and the offer must be accepted and consideration furnished for its enforceability."). "Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." *Blinn*, 708 N.W.2d at 246. "There must be a meeting of the minds or a binding mutual understanding between the parties to contract." *Id.*

"Where an employee handbook expressly states that it creates no contractual obligations, [the Nebraska Supreme Court] ha[s] refused to treat it as creating any such obligations." *Armstrong v. Clarkson College*, 901 N.W.2d 1, 17 (Neb. 2017). For example, in *Hillie v. Mutual of Omaha Insurance Company*, the plaintiff claimed that his employer breached its employment contract with him by terminating him without following two policies in the employer's manual and employee handbook. 512 N.W.2d at 361. The Nebraska Supreme Court concluded that the plaintiff had "failed to adduce any evidence that the language in either [the employer's] manual or employee handbook became part of his employment contract," in part because "[b]oth the manual and the employee

29

handbook state that the terms and policies therein create no contractual obligations between [the employer] and its employees." 512 N.W.2d at 362. The *Hillie* court also noted that the employee handbook explicitly reserved to the employer the right "to make final decisions concerning the interpretation and application of the policies and programs, and to change or discontinue them at any time." *Id.* Moreover, both the manual and the employee handbook "unequivocally reserve[d] to [the employer] and its managers discretion in applying the company's policies and procedures." *Id.* In light of all this, the *Hillie* court affirmed summary judgment in the employer's favor on the plaintiff's breach of contract claim because "[t]he language in [the employer's] manual and handbook does not constitute a definite offer and could not have become part of" the plaintiff's employment contract. *Id.*

> ii. Nordstrom Has Failed to Generate a Genuine Dispute of Material Fact on the Existence of a Contract as Required to Prove a Breach of Contract

Even viewing the evidence in the light most favorable to Nordstrom and affording him all reasonable inferences, the Court concludes that no reasonable jury could find that Nordstrom has met his burden of proving that an enforceable unilateral contract existed between himself and the City. *Blinn*, 708 N.W.2d at 245. Nordstrom has not asserted any basis for an alleged contract besides the Employee Manual, and there is ample evidence that the Employee Manual in effect at the time of Nordstrom's retirement stated that it did "not constitute a contract of employment between the City of Wahoo and employees and no employee shall have a vested right in his/her employment or in the policies and procedures set forth in the manual." Filing 76 at 4 (¶ 15); Filing 75-7 at 3; Filing 81-12 at 3. The Employee Manual in effect at the time of Nordstrom's retirement also indicated that the City "retain[ed] the right to modify or revoke those policies, procedures and benefits at any time." Filing 76 at 4 (¶ 15); Filing 75-7 at 3; Filing 81-12 at 3. Moreover, it is undisputed that every

iteration of the Employee Manual from July 1994 to November 2021, when Nordstrom retired, provided that "[t]his manual is intended to serve only as a guide for City employees. It is not a contract between employees and the City of Wahoo." Filing 76 at 3–4 (¶ 14); Filing 92 at 6 (¶ 3); Filing 75-7 at 1; Filing 81-12 at 1. Each iteration of the Employee Manual from July 1994 to November 2021 also included language explaining that "the policies and benefits in this handbook are subject to change and review by the City at any time without notice." Filing 76 at 3–4 (¶ 14); Filing 92 at 6 (¶ 3); Filing 75-7 at 1; Filing 81-12 at 1. Finally, the record shows that Nordstrom signed a form in February 2001, acknowledging that he had "received a copy of the City of Wahoo Employee Policies and Procedures Manual" and that he understood that the "manual [was] neither a contract of employment nor a legal document and nothing in the manual create[d] an express or implied contract of employment." Filing 76 at 2–3 (¶ 11). In that February 2001 form, Nordstrom also acknowledged that the City "can at the sole discretion of the City Council, modify, eliminate, revise or deviate from the guidelines and information in this handbook as circumstances or situations warrant," and that "any changes made by the City of Wahoo with respect to its policies, procedures, or programs can supersede, modify, or eliminate any of the policies or procedures" outlined in the Employee Manual. Filing 76 at 2–3 (¶ 11).

In addition to explicitly stating that it is not a contract between the City and City employees, the Employee Manual unequivocally reserves to the City the right to "modify or revoke"—"change and review"—the policies, procedures, and benefits outlined in the Employee Manual, including the retirement health insurance provision. Filing 75-7 at 1, 3; Filing 81-12 at 1, 3. Like the plaintiff in *Hillie*, then, Nordstrom has failed to adduce any evidence that the language in the Employee Manual constitutes a definite offer, which is required for the formation of a unilateral contract under Nebraska law. *Hillie*, 512 N.W.2d at 362. Because Nordstrom has failed to generate a genuine issue

of material fact regarding the existence of a unilateral contract, the Court concludes that Defendants are entitled to summary judgment on Nordstrom's breach of contract claim. *See Whitworth v. Kling*, 90 F.4th 1215, 1217 (8th Cir. 2024) ("The movant is entitled to judgment as a matter of law 'when the plaintiff has failed to make a sufficient showing of the existence of an essential element of her case.'" (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996))).

      c.   The Contract Clause Claims

          i.   Nordstrom's Failure to Generate a Genuine Dispute of Material Fact on the Existence of a Contract Similarly Dooms His Contract Clause Claims

Nordstrom's Contract Clause claims fail for the same reason his breach of contract claim fails: Nordstrom has not generated a genuine dispute of material fact on the existence of a contract between him and the City.

The Nebraska Supreme Court applies a "three-part analysis to determine whether a contract has been unconstitutionally interfered with" under the state Contract Clause, examining: "(1) whether there has been an impairment of the contract; (2) whether the City's actions, in fact, operated as a substantial impairment of the contractual relationship; and, if so, (3) whether that impairment was nonetheless a permissible, legitimate exercise of the City's sovereign powers." *The Lamar Co., LLC v. City of Fremont*, 771 N.W.2d 894, 905 (Neb. 2009) (citing *Miller v. City of Omaha*, 573 N.W.2d 121 (Neb. 1998)). When the plaintiff "cannot establish the first prong of the *Miller* analysis, [the court] do[es] not consider the remaining prongs." *Id. See also Christiansen*, 849 N.W.2d at 581 (explaining that where the plaintiffs did not have any contractual rights, "no analysis under the [state] Contracts Clause is necessary").

The Eighth Circuit applies a "two-prong test to determine whether a state has impermissibly interfered with a contract" under the federal Contract Clause, considering:

(1) whether the state law substantially impairs a contractual relationship, which takes into consideration "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights," *Sveen v. Melin*, 584 U.S. [811, 819], 138 S. Ct. 1815, 1821–22, 201 L.Ed.2d 180 (2018); and (2) if the first prong is met, "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose,'" *Ass'n of Equip. Mfrs. v. Burgum*, 932 F.3d 727, 730 (8th Cir. 2019) (quoting *Sveen*, 138 S. Ct. at 1822) (internal quotation marks omitted).

*Heights Apartments, LLC v. Walz*, 30 F.4th 720, 728 (8th Cir. 2022). "[B]efore the Court can determine whether the impairment is substantial, it must first identify what contractual rights, if any, have been impaired." *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 851 (8th Cir. 2002). This requires "identifying the precise contractual right that has been impaired. . . ." *Id.* (internal quotation marks omitted) (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987)). "[W]hether a contract was made is a federal question for purposes of [federal] Contract Clause analysis." *Hawkeye Commodities*, 486 F.3d at 437 (internal quotation marks omitted) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 187 (1992)). Even though a "court is 'bound to decide for [itself] whether a contract was made, what are its terms and conditions, and whether the state has, by later legislation, impaired its obligation,'" this decision necessarily "'involves an appraisal of the statutes of the states and the decisions of its highest courts.'" *Hawkeye Commodities*, 486 F.3d at 437 (quoting *Ind. ex rel. Anderson v. Brand*, 303 U.S. 95, 100 (1938)). When no contractual agreement exists, the Court "need not reach the questions of impairment." *Romein*, 503 U.S. at 186–87 ("[W]e need not reach questions of impairment, as we hold that there was no contractual agreement regarding the specific workers' compensation terms allegedly at issue.").

Here, the Court does not need to reach the questions of impairment under either a state or federal Contract Clause analysis because, as the Court concluded above, no reasonable jury could find that Nordstrom has met his burden to prove the existence of an enforceable contract between

him and the City. *See The Lamar Co.*, 771 N.W.2d at 905; *Romein*, 503 U.S. at 186–87. Nordstrom

himself agrees that absent a contract, any Contract Clause analyses is inappropriate. Filing 89 at 10

(Nordstrom's statement agreeing "with the Defendants that absent a finding that there is a contract

between the parties, then the impairment of contract cause of action ends"). Because Nordstrom has

not made a sufficient showing of the existence of a contract—an essential element of his Contract

Clause claims—Defendants are also entitled to summary judgment on those claims. *See Whitworth*,

90 F.4th at 1217 ("The movant is entitled to judgment as a matter of law 'when the plaintiff has

failed to make a sufficient showing of the existence of an essential element of her case.'" (quoting

*Andrews*, 98 F.3d at 1074)).

> ii. Nordstrom Also Has Not Generated a Genuine Dispute of
> Material Fact that He Possessed a Contractual Right to the
> Retirement Health Insurance Benefits

Before the Court leaves the Contract Clause claims, however, there is one final aspect of a

Contract Clause analysis that the Court will address: the Nebraska Supreme Court's line of cases

holding that a plaintiff-employee can in certain circumstances have a constitutionally protected

contractual right to deferred compensation.

The Court begins with a brief discussion of the relevant cases, turning first to *Halpin v.

Nebraska State Patrolmen's Retirement System*, 320 N.W.2d 910 (Neb. 1982). In *Halpin*, the

Nebraska Supreme Court found that retired state patrolmen possessed contractual rights in their

pensions, even though the pension system was statutory in nature, not contractual. *Halpin*, 320

N.W.2d at 913–14. The court reached this conclusion after determining that the patrolmen's pension

benefits were "deferred compensation," that is, compensation "earned in exchange for services

rendered." *Id.* at 914. According to the *Halpin* court, the benefit of the state's retirement system was

the pension, which "form[ed] an inducement to the individual to enter and remain in the service of

the [state], and . . . the pension in a sense [was] part of the compensation paid for those services." *Id.* at 913 (internal quotation marks and citation omitted) (omission in the original). Unlike a gratuity—which the court explained was a type of benefit "springing from the appreciation and graciousness of the sovereign" and was "not a matter of contract"—deferred compensation was "contractual in nature" and thus could not be unconstitutionally impaired by state action. *Id.* at 913–14 (internal quotation marks and citations omitted).

Over 30 years later, in *Christiansen v. County of Douglas*, 849 N.W.2d 493 (Neb. 2014), the Nebraska Supreme Court distinguished a county's practice of providing retired employees with health insurance coverage for a premium paid by the retirees from the *Halpin* patrolmen's pensions. As in *Halpin*, the benefit that the *Christiansen* plaintiffs claimed—there, the right to receive retirement health insurance coverage for the same premiums paid by active employees—was statutory in nature, not contractual. *Christiansen*, 849 N.W.2d at 497. Unlike in *Halpin*, however, the *Christiansen* court concluded that the retired employees did not have a contractual right to that benefit because the county's health insurance plan was "not a pension or deferred compensation." *Id.* at 506. The court explained that "[a]n employee's participation in [the county's health insurance plan] was purely voluntary, and obtaining coverage under the [p]lan was not contingent upon the rendering of services, but rather, required the payment of premiums." *Id.* The *Christiansen* court differentiated between the county's retirement plan—which was also statutory and which the court said was more similar to the pension system in *Halpin* because it contained the word "shall," indicating that its benefits were "mandatory" and statutorily vested—and the county's health insurance plan—which provided only that the county "may" establish health insurance coverage for employees, presumably including retired employees. *Id.* The court gave to the word "may" its "ordinary, permissive, and discretionary meaning" and ultimately concluded that unlike the

retirement plan, there was no "statutory vesting in [the county's] health insurance plan." *Id.* Because the retired county employees "had no contractual right to participate in the [county's health insurance plan] for the same premiums paid by active employees," "no analysis under the Contracts Clause [was] necessary." *Id.*

Together, *Halpin* and *Christiansen* arguably make room for a Contract Clause claim to exist under Nebraska law even in the absence of a contract if an employee points to state action that unconstitutionally interfered with benefits constituting a pension or deferred compensation. *Halpin,* 320 N.W.2d at 914 (engaging in a Contract Clause analysis because the plaintiffs' statutory pension rights were deferred compensation); *Christiansen*, 849 N.W.2d at 506 (refusing to engage in a Contract Clause analysis because the benefit that the plaintiffs claimed a contractual right to was not a pension or deferred compensation).

Nordstrom cites to *Halpin* five times in his brief opposing Defendants' Motion for Summary Judgment. *See* Filing 89 at 10–11, 13. He references *Halpin* in passing in his Contract Clause argument, but notably he does not argue there that *Halpin* gives him a contractual right to the retirement health insurance benefit he seeks.[2] Instead, Nordstrom's only substantial argument

---

[2] Nordstrom makes the following references to *Halpin* in the section of his brief devoted to his Contract Clause argument, and he does not otherwise expand on these references:

> However, the Nebraska Supreme Court applies significant weight in determining the existence of a contract to the expectation on the employee. "In *Halpin v. Nebraska State Patrolmen's Retirement System*, we indicated that what is protected is the settled or reasonable expectation of the employee, not the contract as might be written by the courts. What the Constitution protects are the expectations the employee relied upon to his or her detriment and to the benefit of the employer, who gains the employee's valuable services and loyalty." *Miller v. City of Omaha*, 253 Neb. 798, 808, 573 N.W.2d 121, 128–29 (1998), citing *Halpin*, 211 Neb. 892, 320 N.W.2d 910 (1982).

> * * *

> Boiled down, it appears that pure pecuniary interests are not legitimate exercises of a state's police power, if assuming a political subdivision even has a policy [sic] power authority. "That the maintenance of a retirement plan is heavily burdening a governmental unit has not itself been

36

regarding *Halpin*'s applicability to his case (and *Christiansen*'s inapplicability to his case) appears in the section of his brief devoted to his First Cause of Action, his NWPCA claim. Filing 89 at 9–10. There, as part of his NWPCA argument, Nordstrom contends that "*Halpin* relied upon the nature of the post-employment benefit being vested, because it was based upon legitimate expectations of the employees while they were working for the State Patrol." Filing 89 at 10. According to Nordstrom, the retirement health insurance benefits he seeks in this case can be clearly distinguished from the benefits in *Christiansen* because here, he "earned a vested benefit called accrued personal leave, to which he appeared to be entitled to payment or payments after separation," while the *Christiansen* plaintiffs "provided no consideration for their demand for continued health insurance coverage." Filing 89 at 10. Without citing any support, Nordstrom explains that "[v]ested benefits are based upon hard numbers, with a clear end in sight, hence the reason the Court considers them deferred compensation." Filing 89 at 10. All told, Nordstrom argues that "[t]he clear distinctions between *Christiansen* and this matter make it clear that vested benefit rights are one of the types [of] fringe benefits under the [N]WPCA." Filing 89 at 10.

Nordstrom's argument is not convincing. Neither *Halpin* nor *Christiansen* analyze an NWPCA claim, yet Nordstrom specifically discusses those Contract Clause cases in his NWPCA argument sections in both his brief opposing the Defendants' Motion for Summary Judgment, Filing 89 at 9–10, and in his brief supporting his own Motion for Partial Summary Judgment, Filing 79 at

_____

permitted to serve as a justification for a scaling down of benefits figuring in the contract." *Halpin*, 211 Neb. at 892, 320 N.W.2d at 911.
Filing 89 at 10, 13.

3–7.[3] Nordstrom also addresses *Halpin* and *Christiansen* as part of his breach of contract argument in his reply brief in support of his Motion for Partial Summary Judgment. Filing 94 at 4.

Nordstrom has not argued that the retirement health insurance benefit he seeks constitutes deferred compensation under *Halpin*. At most, Nordstrom has argued that the payment of accrued personal leave, which he contends is a "vested benefit" that he has earned, is deferred compensation. Filing 89 at 10. The benefit outlined in the retirement health insurance provision, however, is the benefit of "hav[ing] 'employee only' health insurance paid to age 65,"[4] not the general payment of accrued personal leave. Filing 75-7 at 41; Filing 81-12 at 41. Because he has "'failed to provide meaningful legal analysis' that applie[s] to the facts and support[s] [his] claim," the Court concludes that Nordstrom has waived any deferred compensation argument under *Halpin* with respect to his Contract Clause claims. *Johnson v. Midwest Div. – RBH, LLC*, 88 F.4th 731, 738 (8th Cir. 2023) (quoting *Johnson Tr. of Operating Engineers Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 523 (8th Cir. 2020)).

Even if Nordstrom did not waive any *Halpin* deferred compensation argument by failing to provide any meaningful legal analysis supporting it, such an argument would still fail.[5] The crux of

---

[3] Moreover, as the Court has already noted, Nordstrom does not move for summary judgment on his Contract Clause claims in his Motion for Partial Summary Judgment. *See* Filing 78.

[4] As the Court mentioned briefly in the factual background section of this Order, the parties debate whether the retirement health insurance provision contemplated the City paying this benefit by enrolling an early retiree in continued health insurance coverage until age 65 or by merely paying the early retiree's health insurance premium costs. *See* Filing 79 at 7. This difference is not material, however, because the question of how the benefit might or should have been paid out is not a question that "might affect the outcome of the suit under the governing" Contract Clause law. *Rusness*, 31 F.4th at 614 (internal quotation marks and citations omitted). The question that matters is whether the benefit of having "employee only" health insurance paid out to age 65 was deferred compensation—"compensation which is earned in exchange for services rendered"—such that the Nordstrom had a contractual right in the benefit protected by both the state and federal Contract Clauses. *Christiansen*, 849 N.W.2d at 505.

[5] Although the Court concludes that any deferred compensation argument under *Halpin* was not appropriately argued and brought before the Court by the plaintiff and thus waived, the Court believes it appropriate to address this issue in the alternative now in the interest of efficiency in the event further review of this Order is requested on appeal.

the argument—assuming it was properly argued—is that the benefit of having "employee only" health insurance paid to age 65 is deferred compensation under *Halpin*, meaning Nordstrom would have a constitutionally protected contractual right to that benefit. However, there is nothing in the record on which a reasonable jury could find that the benefit of having "employee only" health insurance paid to age 65 constituted deferred compensation.

Before it was removed from the Employee Manual in February 2022, the retirement health insurance provision stated the following: "If an employee retires at age 62 and has completed 20 years of service, the employee may forfeit 480 hours of accumulated personal leave and opt to have "employee only" health insurance paid to age 65." Filing 75-7 at 41; Filing 81-12 at 41. Other relevant provisions in the Employee Manual explain that "personal leave" is available to regular full-time City employees, is accrued "at a rate of .0462 hours for each hour worked," and "may be utilized by an employee . . . to fulfill certain obligations without having to use Vacation Leave." Filing 75-7 at 40; Filing 81-12 at 40. However, all personal leave requests "must be submitted for approval to the Appointed Official in advance, and may be denied by the Appointed Official, at the Appointed Official's discretion." Filing 75-7 at 40; Filing 81-12 at 40. The Employee Manual also provides that upon an employee's retirement, an amount of accrued personal leave will be paid out to the employee, depending on the employee's number of years of service and number of hours accrued.[6] Filing 75-7 at 41; Filing 81-12 at 41. Although the retirement health insurance provision

---

[6] The Employee Manual's "Personal Leave" section spans two pages, but the relevant provision discussing the payment of accrued personal leave states the following:

> All accrued Personal Leave shall expire on the date of separation of an employee with the City, except: if an employee has ten (10) years of service with the City and has reached age 59½, one half of accrued Personal Leave up to 480 hours will be paid to an employee; if an employee has twenty (20) years of service and has reached age 59½, then accrued Personal Leave up to 960 hours will be paid to an employee; if an employee has twenty-five (25) years of service with the City, regardless of age, then accrued Personal Leave up to 960 hours will be paid to an employee; pay will be at the employee's

contemplates an exchange of accrued personal leave for health insurance, the benefit outlined in that provision is not the *payment* of accrued personal leave, but the benefit of having "employee only" health insurance paid to age 65. Nothing in the record indicates that this benefit is "compensation which is earned in exchange for services rendered." *Christiansen*, 849 N.W.2d at 505 (internal quotation marks and citation omitted).

First, as the Court has already explained in detail in Section V.A.2.b. above, the provisions in the Employee Manual—including the retirement health insurance provision and the personal leave provisions—"are subject to change and review by the City at any time without notice." Filing 75-7 at 1; Filing 81-12 at 1. The City's reservation of its right to "modify or revoke" the policies, procedures, and benefits in the Employee Manual was clearly and indisputably communicated to Nordstrom throughout the various Employee Manuals themselves and in the acknowledgment form he signed in February 2001. Filing 75-7 at 3; Filing 81-12 at 3. Accordingly, it does not follow that the mutable provisions in the Employee Manual could have "form[ed] an inducement to [Nordstrom] to enter and remain in the service of the [City]," such that they constituted deferred compensation under *Halpin*. *Halpin*, 320 N.W.2d at 913 (internal quotation marks and citation omitted). *But see Calabro v. City of Omaha*, 531 N.W.2d 541, 548–49 (Neb. 1995) (holding that the city's cost-of-living supplemental benefit plan constituted a pension, rather than a gift, because the city failed to "put employees or potential employees on notice that the supplemental benefit could be taken away with the stroke of a pen").

---

rate of pay as of the date of separation, who has voluntarily resigned as an employee of the City or who is terminated due to a reduction in the work force or elimination of the employee's position by the City.

Filing 75-7 at 41; Filing 81-12 at 41.

Second, the text of the retirement health insurance provision—specifically the words "may" and "opt"—indicates that the exchange of 480 hours of accumulated personal leave for the benefit of "employee only" health insurance paid to age 65 was "purely voluntary," much like the *Christiansen* retirees' decision to participate in the county's health insurance plan. *Christiansen,* 849 N.W.2d at 506. If the health insurance language at issue in the Employee Manual were given full authority, an employee who was 62 years old and had worked for the City for at least 20 years would not automatically lose his 480 hours of accumulated personal leave if the employee did not opt for health insurance until the age of 65. Instead, under the Employee Manual's other personal leave provisions, that same employee would be paid up to 960 hours of his accrued personal leave upon his retirement. Filing 75-7 at 41; Filing 81-12 at 41. By choosing to invoke the retirement health insurance provision, then, an employee effectively chose to pay for retirement health insurance benefits by sacrificing a portion of his accrued personal leave. An employee's decision to make this sacrifice was "purely voluntary" and, importantly, the City retained discretion to modify or altogether remove the retirement health insurance provision—or the personal leave provisions— at any time. *Christiansen,* 849 N.W.2d at 505. *See also Livingston v. Metro. Util. Dist.,* 692 N.W.2d 475, 480–81 (Neb. 2005) (concluding that the defendant's long-term disability policy did not constitute either a pension or deferred compensation because an employee's enrollment in this plan was "purely voluntary" and because the defendant's "board of directors retained the discretion to modify the terms of [the long-term disability] coverage").

Ultimately, Nordstrom's failure to generate a genuine dispute of material fact that the retirement health insurance benefit was deferred compensation reinforces the Court's conclusion that Defendants are entitled to summary judgment on the Contract Clause claims. *See Whitworth,* 90 F.4th at 1217 ("The movant is entitled to judgment as a matter of law 'when the plaintiff has

failed to make a sufficient showing of the existence of an essential element of her case.'" (quoting *Andrews*, 98 F.3d at 1074)).

3.  Nordstrom's Motion for Partial Summary Judgment

Because the Court concludes that Defendants are entitled to summary judgment on Nordstrom's entire Second Cause of Action, Nordstrom's Motion for Partial Summary Judgment on the breach of contract claim is denied.

### B.  State Law Claims

Nordstrom's three remaining causes of action arise under Nebraska law: a NWPCA claim, a claim for estoppel and detrimental reliance, and a negligent misrepresentation claim. Under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *See also Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) ("It is within the district court's discretion to exercise supplemental jurisdiction after dismissal of the federal claim.") (quoting *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006)).

"In the usual case where all federal claims are dismissed on a motion for summary judgment, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Starkey v. Amber Enter., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (internal quotation marks and citation omitted) (bracketed language in the original). *See also McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) ("In fact, when a district court has dismissed every federal claim, as here, 'judicial economy, fairness, and comity' will usually 'point toward declining to exercise jurisdiction over the remaining state-law claims.'" (quoting *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016))).

Having considered the relevant factors, the Court will refrain from exercising supplemental jurisdiction over Nordstrom's remaining state law claims and will remand the case to the District Court of Saunders County, Nebraska. To the extent Defendants' Motion for Summary Judgment and Nordstrom's Motion for Partial Summary Judgment are directed toward the state law claims, they are denied as moot.

## VI. CONCLUSION

For the foregoing reasons,

IT IS ORDERED that

1. Defendants' Motion for Summary Judgment, Filing 74, is granted in part and denied in part as follows:

a. The Motion is granted as to the entirety of Nordstrom's Second Cause of Action; and

b. The Motion is denied as moot as to Nordstrom's First Cause of Action (NWPCA claim), Third Cause of Action (estoppel and detrimental reliance claim); and Fourth Cause of Action (negligent misrepresentation claim).

2. Nordstrom's Motion for Partial Summary Judgment, Filing 78, is denied as follows:

a. The Motion is denied on the merits as to Nordstrom's breach of contract claim in his Second Cause of Action; and

b. The Motion is denied as moot as to Nordstrom's First Cause of Action (NWPCA claim).

IT IS FURTHER ORDERED that

3. This case is remanded to the District Court of Saunders County, Nebraska.


Dated this 29th day of May, 2025.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge